**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TAMMY L. WHEATON,

     Plaintiff,

*v*.                       CASE NO. 09-CV-10447

COMMISSIONER OF          DISTRICT JUDGE GEORGE CARAM STEEH
SOCIAL SECURITY,         MAGISTRATE JUDGE CHARLES E. BINDER

     Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

## I.    RECOMMENDATION

In light of the relevant evidence of record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits.   This matter is currently before the Court on cross-motions for summary judgment.  (Docs. 11, 14.)

Plaintiff was 44 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 8 at 18, 38.)  Plaintiff's relevant employment history consists of 3 years as an emergency medical technician, housekeeper, auto warranty salesperson, and bartender.  (Tr. at 88.) Plaintiff filed the instant claims on December 10, 2002, alleging that she became unable to work on October 3, 2000.  (Tr. at 76.)  The claim was denied initially and upon reconsideration.  (Tr. at 38, 41.)  In denying Plaintiff's claims, the Defendant Commissioner considered post-traumatic headaches and organic mental disorders (chronic brain syndrome) as possible bases of disability. (*Id.*)

On November 1, 2006,[2] Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Joseph D. Schloss, who considered the case *de novo*.  In a decision dated January 25, 2007, the ALJ found that Plaintiff was not disabled.  In the process, the ALJ concluded that Plaintiff's eligibility for benefits terminated on September 30, 2004, and therefore did not consider medical evidence after that date.  (Tr. at 18.)  Plaintiff requested a review of this decision on February 5, 2007.  (Tr. at 12.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on December 15, 2008, when, after the review

---

[2]Plaintiff originally appeared on August 16, 2005.  The ALJ sent interrogatories to Dr. William DeBolt, M.D., to provide a medical source statement and, after such answers were given, Plaintiff's counsel requested a supplemental hearing, which the ALJ permitted.  (Tr. at 17-18.)

of additional exhibits[3] (Tr. at 915-31), the Appeals Council denied Plaintiff's request for review. (Tr. at 4-6.)  On February 5, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990).  The administrative process itself is multifaceted, in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  *Accord Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

---

[3]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *Accord Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility" (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."))). *See also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,*

486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "[Benefits] are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540).  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and

considering relevant vocational factors." *Rogers,* 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v), (g).

### D.     Administrative Record

The evidence presented to the ALJ reveals that Plaintiff's initial symptoms began in January of 1997 when she fell down a flight of concrete stairs while working as an EMT.  (Tr. at 326.) She  was treated and doing quite well until October 3, 2000, when, while driving, she was struck from behind by another vehicle.  (*Id.*)

Immediately following the accident, Plaintiff participated in physical therapy at the McLaren Regional Rehab Center to address symptoms of nausea, vomiting, and vertigo.  (Tr. at 247.)  As of December 19, 2000, the physical therapist indicated that Plaintiff's "symptoms have been reduced to a certain degree, however, she continues to have significant nausea and vomiting several times a day.  Symptoms are elicited mostly by visual stimuli that have repetitive characteristics, such as a nodding head."  (*Id.*)  The therapist indicated that Plaintiff was "anxious to get on with her life" and indicated that therapy would not continue unless the physician had "any therapy related suggestions."  (*Id.*)

Plaintiff was also treated by Hussam El-Kashlan, M.D., of the University of Michigan's ("U of M") Otolaryngology section, who concluded that Plaintiff "has a classic picture of migraine-associated dizziness."  (Tr. at 382-83.)  He based this conclusion on his findings which showed Plaintiff had an "intense reaction to visually-challenging environment, as well as her chronic motion intolerance, photophobia and phonophobia." (Tr. at 583.)  At that time, her migraines were a "significant impairment to her lifestyle."  (*Id.*)

Plaintiff participated in speech-language pathology services from November 2001 to July 2002.  The discharge report indicated that she was "able to return to active employment on a

reduced time schedule; however, still needing consultations of assistance in adjustments." (Tr. at 303.) The report also found that Plaintiff's language function, intelligibility, reading skills, writing skills, voice, behavior, and hearing were all "within normal limits" or "within functional limits." (Tr. at 304.) However, Plaintiff was also found to have "[m]ild cognitive communicative disorder." (Tr. at 305.)

Plaintiff sought vestibular rehabilitation with the U of M's Division of Physical Therapy. On May 30, 2002, the initial evaluation reported that the "Romberg test was normal with eyes open or closed." (Tr. at 245.) Plaintiff's "gait was slow paced and appeared guarded but was steady. 180 degree turns were slow paced and steady." (*Id.*) Plaintiff "was able to rise from chair easily without use of UE demonstrating normal balance." (*Id.*) Plaintiff also "had no c/o dizziness at rest. Hallpike-Dix maneuver and roll test for BPPV were negative bilaterally." (*Id.*) The physical therapist found "no sign of Benign Paroxysmal Positional Vertigo (BPPV) on today's exam and if it is occurring it seems to be a small part of patient's current symptoms. It is the one vestibular disorder that can be resolved quickly with treatment but I cannot provide the treatment if I cannot provoke the symptoms here in the clinic." (*Id.*) Thus, the therapist stated that she "do[es] not recommend vestibular exercises at this time . . . [and] encourage[d] [Plaintiff] to stay as active as she can with walking each day." (*Id.*)

In September 2002, Sharon McDowell, M.D., of the Department of Physical Medicine and Rehabilitation at U of M, stated that Plaintiff showed "tremendous improvement" since using Depakote to prevent migraine headaches but that she was still experiencing vomiting and dizziness that is "visually provoked" by things such as windshield wipers and strobe lights. (Tr. at 297.) Plaintiff was also taking "classes working towards an associates degree in quality control and

looking forward to a new career." (Tr. at 297-98.) Plaintiff reported that her migraine headaches were "tremendously improved" since using Depakote. (Tr. at 298.)

As of May 2002, Plaintiff was reporting that although she had "some improvement," she continued to have "severe headaches." (Tr. at 566.) In November 2002, Plaintiff's headaches occurred "a couple" times a week and a severe headache every "couple weeks or so." (Tr. at 545.) In June 2003, Plaintiff reported that "now that she is on Depakote and Pamelor, her headaches have subsided significantly" but she "does have a mild headache in the morning daily, but this is not a big deal" and she "does occasionally get migraines about every seven to ten days." (Tr. at 539.) Plaintiff was "sent back to Vestibular Rehab and she was again unable to tolerate the therapy." (*Id.*)

As of July 2003, Plaintiff reported that she had "much improvement in her migraine headaches, which were previously daily." (Tr. at 527.) Plaintiff was still "vomiting after observing repetitive movement" and she was referred for therapy, but by August 2003, it was noted that Plaintiff was unable to tolerate the vestibular therapy. (Tr. at 527, 533.)

Plaintiff was also treated with osteopathic manipulation "focusing on the cranial and cervical regions." (Tr. at 524.) In August 2003, after treatment, the cranial rhythmic index and cranial motion improved "significantly." (*Id.*)

On September 22, 2003, Plaintiff reported that in the past week she had had "no migraine headaches" and only two ordinary headaches whose symptoms were eliminated by taking Motrin. (Tr. at 509.) Plaintiff also reported "2-3 episodes of vomiting daily depending on her activity; however, this remains down from a previous level of 6 times per day." (*Id.*) Plaintiff "felt so much better this week that she went to a shooting range for the first time in 3 years, specific activity that she used to derive great pleasure from." (*Id.*)

9

In October 2003, Plaintiff reported to Sharon McDowell, M.D., that she had four migraine headaches in the previous two-week period and even woke up once because of the pain which was "unusual for her." (Tr. at 496.) "On a positive note she has had decreased vomiting only one to two times per day and she had at least two days where there was no vomiting whatsoever." (*Id.*) "She [was] quite pleased with this as a trade off for the headaches over the last two weeks." (*Id.*) At that time, Plaintiff was "babysitting for her grandson a lot during the day" but had "quit her class because she is overwhelmed . . . ." (Tr. at 500.) In November 2003, Dr. McDowell "recommend[ed] that she begin vocational rehabilitation after she has finished her class work." (Tr. at 502.)

A social work status report for the period between August and November of 2003 indicated that Plaintiff's adjustment/depression had "[i]mproved, with depression in mild range most of quarter; anxiety in mild range." (Tr. at 274.) However, at the end of the quarter, Plaintiff had "increased depression, withdrawl [sic] and excessive sleeping in response to stress of daughters moving back home and friends advise [sic] to forget about returning to work." (*Id.*)

In March 2004, James A. Leonard, Jr., M.D., a physician at the University of Michigan's Department of Medicine and Rehabilitation, wrote to Dr. Shaheen[4] and stated that Plaintiff "has had significant improvement from osteopathic manipulation" and that Plaintiff's vomiting, migraine headaches and muscle tension headaches "have also improved during her treatment in this clinic." (Tr. at 265.) Dr. Leonard noted that Plaintiff had "increased her activity level significantly, . . . engages in a walking and exercise program [and] is driving somewhat more." (*Id.*) He also noted that "[u]nfortunately, in late January to early February, she had an exacerbation of her symptoms" when she used an "elliptical trainer; she had immediate onset of vertigo, which

---

[4]Plaintiff's treating physician in Flint, Michigan.

10

was new for her . . . [but t]hrough intensive manipulation treatment as well as with increases in her Zofran and medicine as needed, she has returned to near baseline for her." (*Id.*)

In August 2004, a McLaren Hospital Head and Spinal Cord Injury Program team conference report indicated that Plaintiff's "cervical spine is straightening" and that she also has "degenerative disk disease in cervical spine and lumbar spine" likely due to the trauma suffered in the automobile accident. (Tr. at 710.) Plaintiff also began psychotherapy sessions at McLaren Hospital beginning in August 2004 and was "somewhat meeting goals" and showing "fair+" progress at the initial stage. (Tr. at 738.) On September 30, 2004, a Rehabilitation Consultant concluded that Plaintiff "has not been released by her doctors to work and based on her current problems, it does not appear that that is going to occur." (Tr. at 842.)

A Physical Residual Functional Capacity ("RFC") Assessment performed in July 2003 concluded that Plaintiff can occasionally lift up to 50 pounds, frequently lift 25 pounds, stand or walk for about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and has an unlimited ability to push or pull. (Tr. at 236.) No manipulative, visual, or communicative limitations were found. (Tr. at 238-39.) The sole environmental limitation regards hazards. (Tr. at 239.)

Plaintiff testified that "excessive motion" brings on vomiting, such as windshield wipers or using a hand mixer, but that she can use a stand mixer. (Tr. at 940-41.) She further testified that she has between two and five migraines per week. (Tr. at 941-42.) She indicated she can lift a gallon of milk, but has difficulty lifting her two-year-old grandson. (Tr. at 942.) Plaintiff stated that "[e]xcess walking turns into vomiting and back aches" and that "standing, you get vertigo and back strain. The neck starts getting sore." (Tr. at 943.) Plaintiff also indicated that if she sits for

prolonged periods of time, her "[l]ower back and my neck hurts. And when [I] try to stretch

because of the pain, I end up with the shoulder tension, also." (Tr. at 945.)

> The ALJ asked the Vocational Expert ("VE") the following hypothetical:

> [A]ssume a person 38 years of age, with 13 years of education, who's done all that
> same past relevant work that Ms. Wheaton has done, who has the following residual
> functional capacity. She may occasionally lift up to 50 pounds, frequently 25. Can
> stand and walk six hours out of an eight hour day, sit up to six hours – or eight
> hours, according to the treating doctor, without any problem. Can occasionally
> climb. Her push and pull would [be] limited to within the weight that I have given
> you. She should avoid even moderate exposure to heights and moving machinery,
> which would preclude climbing or ropes, ladders and scaffolds. Further, that person,
> non-exertionally, would be – or slightly impaired in interacting appropriately with
> the general public. Slight is less than moderate. Moderate means average, so it's
> a very small, if any, interaction with the general public restriction. Would be
> moderately impaired in responding appropriately to work pressures in a usual work
> setting, and slightly impaired in responding to changes in a routine work setting.
> Would that person be able to do any of the past relevant work of this Claimant?

(Tr. at 980-81.) The VE responded that such a person would be able to perform warranty sales,

waitress, housekeeper, bartender, and trainer jobs. (Tr. at 981.) The ALJ then asked the VE to

consider a second hypothetical:

> [I]f that person was limited to lifting occasionally 10 pounds, frequently less than
> 10 pounds, could only stand and walk two hours out of an 8 hour day, but has
> unlimited sitting, but could alternate her sit and stand with the sit, stand, and walk
> option. And that person further is limited to no more than 10 pounds in push and
> pull with both upper and lower extremities, with a preclusion against climbing,
> balancing, kneeling, crouching, crawling and stooping. Further, reaching in all
> directions overhead can only be done occasionally, but has no difficulty in fingering,
> handling or feeling. Could that – oh, wait a minute, and two others. Should avoid
> the hazardous machinery and heights, and should avoid dust, odors, chemicals and
> gases. I take it that person could not do any of the past relevant work?

(Tr. at 981-82.) To which the VE responded that such a person could perform the warranty sales

job. (Tr. at 982.) When the ALJ asked the VE to factor in that the person has migraines, Plaintiff's

counsel indicated Plaintiff "might have three or four" per week. (Tr. at 983.) The ALJ noted that

people who have migraines at work do not always miss work so he asked counsel how many days

per week Plaintiff would miss due to migraines and counsel responded "at least two days a week." (*Id.*) The ALJ stated that any person missing two days a week would be precluded from working. (*Id.*)

### E.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since October 3, 2004, and that her eligibility for benefits ceased on September 30, 2004. (Tr. at 24.) At step two, the ALJ found that Plaintiff's status post-closed head injuries (post-traumatic head syndrome), degenerative disc disease, cervical and lumbosacral spine, and reactive depression were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could perform her past relevant work as a warranty salesperson, housekeeper and CPR trainer during the period in question. (Tr. at 25.) Therefore, the ALJ found Plaintiff was "not disabled." (*Id.*)

### F.    Analysis & Conclusions

### 1.    Return to Prior Work

As noted, the ALJ concluded that Plaintiff had the ability to return to her prior work. (Tr. at 21-22.) This finding ended the ALJ's disability inquiry because Plaintiff could not make out a prima facie showing of disability.

The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f). "'By referring to the claimant's ability to perform a

"kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

In determining the level of exertion required by prior work, the testimony of the VE should be compared to the Dictionary of Occupational Titles ("DOT"). *Bauer v. Barnhart*, 168 Fed. App'x 719 (6th Cir. 2006). Simply asking the VE if his testimony is consistent with the DOT satisfies the requirements under Social Security Regulation 00-4p. *Martin v. Comm'r of Social Security*, 170 Fed. App'x 369, 375-76 (6th Cir. 2006).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.    Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In order to be eligible for disability benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i), 423(c)(1)(B)(i). It is improper for an administrative law judge to concentrate on a claimant's abilities and condition at the date of hearing, rather than during the time period when the plaintiff

met the special earnings' requirements. *Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979). *See also Mohr v. Bowen*, No. 87-1534, 1988 WL 35265, at *2 (6th Cir. April 21, 1988). In this circuit, to qualify for social security disability benefits, disability must be proven to exist during the time the plaintiff was insured within the meaning of the special insured status requirements of the Act; if the plaintiff becomes disabled after the loss of insured status, the claim must be denied even though the plaintiff has indeed become disabled. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975); *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979). Thus, as a general rule, the only medical evidence relevant to the issue of disability is that medical evidence dealing with a claimant's condition during the period of insured status.

In *Begley v. Mathews*, 544 F.2d 1345 (6th Cir. 1976), the court held, however, that "[m]edical evidence of a subsequent condition of health, reasonably proximate to a preceding time, may be used to establish the existence of the same condition at the preceding time." *Id*. at 1354. Directly on point, the Sixth Circuit held in *Higgs*, 880 F.2d at 863, that the Commissioner must consider medical evidence of a claimant's condition after his date last insured to the extent that the evidence is relevant to the claimant's condition prior to the date last insured.

As to any claim for disability benefits subsequent to September 30, 2004, the ALJ concluded, and it is uncontested, that Plaintiff's insured status ended on September 30, 2004. This was the last quarter in which Plaintiff had 20 quarters of coverage within a 40-quarter period. 20 C.F.R. § 404.130(b). The ALJ therefore ruled that only the evidence pertaining to Plaintiff's condition prior to September 30, 2004, could be considered in support of the disability benefits claim. (Tr. at 24.) On the basis of the Social Security Act and *Estep*, which controls in this circuit,

15

I conclude that the ALJ properly found that Plaintiff's insured status ceased as of September 30, 2004, and as a result, any refusal to consider later medical evidence was proper.

Plaintiff also contends that the ALJ "gave controlling weight to the opinion of Dr. DeBolt, who testified by telephone from his office in Oregon" and who was not a treating physician but rather a consultant. (Doc. 11 at 10.)  Plaintiff further contends that the ALJ's reliance on Dr. DeBolt's testimony to conclude that Plaintiff's "vestibular dysfunction is only a subjective complaint unsupported by objective medical signs" was clearly erroneous. (*Id.*)  Thus, this argument is related to the ALJ's determination that Plaintiff's testimony regarding the disabling nature of her pain was not fully credible.  Plaintiff further argues that Dr. DeBolt's conclusion is erroneous because Dr. McDowell "diagnosed a long-term vestibular dysfunction since the time of the first accident, which was worsened by the second one." (*Id.* at 11.)  In addition, Plaintiff notes that eight treating physicians opined that Plaintiff has equilibrium problems, nausea, vomiting and headaches related to her head injuries and which are consistent with vestibular dysfunction. (*Id.*)  Finally, Plaintiff contends that "Dr. Shaheen specifically stated that Ms. Wheaton is disabled [and that] [t]he only fair inference from the records of the other treating physicians is that in their opinion, as well, Claimant is disabled." (*Id.* at 12.)

Of course, the question before the Court is not what the most fair inference is from the record evidence, but rather whether the ALJ's decision is supported by substantial evidence.  In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole.  20 C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion

16

is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2).  *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits."  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).  Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight."  S.S.R. 96-2p, 1996 WL 374188, at *5 (1996).  *See also Rogers*, 486 F.3d at 242.  "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Rogers*, 486 F.3d at 243.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502.  "The opinion of a non-examining physician, on the other hand, 'is entitled

to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v.*

*Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321

(6th Cir. 1987)).

In the instant case, Plaintiff argues that Dr. Debolt's findings were given too much weight

by the ALJ and that the ALJ should have instead given controlling weight to the opinion of Dr.

McDowell, Plaintiff's treating physician.  Non-examining physician opinions, however, are only

to be given little weight if contrary to the treating physician's opinion. *Adams, supra*.  I suggest

that there is no conflict between them and, thus, it was not improper for the ALJ to give weight to

Dr. DeBolt's opinion.  Consistent with Dr. Debolt, and as discussed by the ALJ, Dr. McDowell

noted that increased dosages of Depakote "resulted in 'tremendous improvement' in the

headaches." (Tr. at 21, 298.)  Dr. McDowell also recommended in November 2003 that Plaintiff

"begin vocational rehabilitation" after she completed the classes she was taking.  (Tr. at 502.)  In

addition, as Defendant notes, Plaintiff has not cited any medical opinions in the record that actually

conclude that Plaintiff is disabled due to vestibular dysfunction.  (Doc. 14 at 13.)

Plaintiff also contends that the ALJ improperly discounted Plaintiff's credibility because

"consideration of the entire case record rationally leads only to the conclusion that Claimant's

symptoms are disabling." (Doc. 11 at 16.)  Plaintiff notes that the ALJ relied on record evidence

such as Dr. Vredevoogd's testimony, Plaintiff's babysitting her grandson, and Plaintiff's daily

activities, but disagrees with the ALJ's conclusion.  (Doc. 11 at 16-18.)

The ALJ found that Plaintiff's complaints of disabling pain were not fully credible.  (Tr.

at 23-24.)  Social Security Regulations prescribe a two-step process for evaluating subjective

complaints of pain.  The plaintiff must establish an underlying medical condition and (1) there

must be objective medical evidence to confirm the severity of the alleged pain rising from the

18

condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.  20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)).  If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms.  20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70.  In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living.  *Id.*

The issue is whether the ALJ's credibility determinations are supported by substantial evidence.  An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

On the record evidence, I suggest that substantial evidence supports the findings of the ALJ that Plaintiff's testimony regarding the level of pain was not fully credible.  As noted by Plaintiff, the ALJ cited record evidence in support of his conclusion, e.g., Dr. Vredevoogd's testimony, Plaintiff's babysitting her grandson, and Plaintiff's daily activities.  (Doc. 11 at 16-18.)  In addition, throughout 2003 and 2004 Plaintiff herself and various treating physicians reported that

Plaintiff was enjoying continuing progress regarding headaches and vomiting.  (Tr. at 265, 496, 502, 509, 738.)  Plaintiff even stated that she "felt so much better . . . she went to a shooting range for the first time in 3 years, specific activity that she used to derive great pleasure from."  (Tr. at 509.)   Plaintiff was also "somewhat meeting goals" and showing "fair+" progress in her psychotherapy sessions in 2004.  (Tr. at 738.)

The ALJ's findings also follow the opinions of the vocational expert which came in response to detailed and proper hypothetical questions that accurately portrayed plaintiff's individual impairments in harmony with the relevant objective record medical evidence.  *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

After review of the relevant record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier*

*Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

   s/ 𝕮harles 𝕰 𝕭inder

CHARLES E. BINDER
Dated: August 20, 2009               United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on counsel of record via the Court's ECF System.

Date: August 20, 2009        By    s/Patricia T. Morris
                               Law Clerk to Magistrate Judge Binder